CRONIN *v.* FIRE ASSOCIATION OF PHILADELPHIA.

1. FIRE INSURANCE—CONDITIONS OF POLICY—FORECLOSURE CLAUSE —WAIVER.

A provision in a fire-insurance policy that it shall be void if, with knowledge of the insured, foreclosure proceedings be instituted against the property without permission of the company indorsed on the policy, is waived where the company's agent, who, at the time the policy issued, was informed by the mortgagee, whose interest is covered by the policy, that he would soon foreclose the mortgage, upon being requested by the mortgagee to make the required indorsement, advises him that it is all right for him to proceed without it.

2. SAME—INSTRUCTIONS.

An instruction in an action on a fire-insurance policy, that if the defendant's adjuster assigned some special reason for

denying liability, and the plaintiff acted thereon, employed counsel, and incurred expenses, the company would be held to have waived all other grounds of forfeiture, is misleading and erroneous, where it appears that another defense was insisted on, concerning which there is no evidence of waiver.

3. SAME—MANUFACTURING PLANT—FAILURE TO OPERATE.
   A condition in a fire-insurance policy that it shall be void if the manufacturing establishment insured ceases to be operated for more than 10 consecutive days is a reasonable and proper one, and failure to comply with it invalidates the policy.

Error to Shiawassee; Smith, J. Submitted October 5, 1898. Decided December 28, 1898.

*Assumpsit* by Michael B. Cronin and Thomas Cronin, for the use and benefit of Milton M. Rose, against the Fire Association of Philadelphia, on a policy of insurance. From a judgment for plaintiffs, defendant brings error. Reversed.

*Crane, Norris & Stevens,* for appellant.

*Walter McBride (Watson & Chapman,* of counsel), for appellees.

LONG, J. This case was in this court at the January term, 1897. 112 Mich. 106. In the trial in the court below in the first instance, plaintiffs had recovered a judgment by the direction of the court for $1,449.30. The case was reversed and remanded for a new trial. The principal defenses then attempted were:

1. That the policy was issued upon a written application, containing representations of facts material to the risk, which were violated.
2. That the insured ceased to operate the creamery for more than 10 days before the fire.
3. That foreclosure proceedings were commenced, to the knowledge of the insured.
4. That the building insured was unoccupied, and so remained for 10 days prior to the fire, without the consent of the company indorsed upon the policy.

It was held that none of these defenses, except that based upon the representations contained in the application for the policy, was set up in the pleadings by defendant, and that only such as were set up could be considered, under the pleadings. The case was reversed upon the ground that the questions should have been submitted to the jury whether the written application offered in evidence was the basis of the insurance, or whether the policy was issued upon a distinct oral application; and whether there was a material misrepresentation. The facts are set out in the former opinion, and need not be again stated, except so far as they become necessary in the determination of the questions raised upon the record now before us. The case has been again tried, and plaintiffs had verdict for $1,682.75. The plea now contains notices of the several defenses referred to in the former opinion, and apparently has been amended since the former trial.

1. The policy provides:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void, * * * if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed."

It appears that on January 9, 1895, Milton M. Rose, as mortgagee, filed a bill to foreclose this mortgage. It was the mortgage mentioned in the policy, and the interest of Mr. Rose as mortgagee was covered by the policy. A subpoena was issued in the case on the filing of the bill, and served on the Cronins. No permit to foreclose was ever indorsed on the policy. It is therefore contended by counsel for defendant that there was a breach of that condition of the policy. It was shown, however, that on December 7, 1894, when the policy was issued, the agent of the insurance company, Mr. W. S. Cooper, was informed that the mortgage would be foreclosed in a short time. Mr. Rose testified that, when he was ready to foreclose, he went to see Mr. Cooper; that he had the policy

with him, and asked Mr. Cooper to fix it, as he had just commenced proceedings that day to foreclose the mortgage; that Mr. Cooper told him to go on with the foreclosure proceedings. It is claimed that this constituted a waiver of the condition in the policy above set forth. In this, we think, counsel for plaintiffs are right. *Beebe* v. *Insurance Co.*, 93 Mich. 514 (18 L. R. A. 481, 32 Am. St. Rep. 519); *Rediker* v. *Insurance Co.*, 107 Mich. 224. It is true that in the above cases the questions arose over the placing of chattel mortgages upon the property without having the permission of the companies indorsed on the policies as provided by them. The provisions were held to have been waived by the action of the local agents; and we think here that Mr. Cooper, the agent of the company, having been informed that the mortgage was about to be foreclosed, and advising, in effect, that it was all right to go on with the foreclosure without permission being indorsed on the policy, the company cannot now insist upon the forfeiture, but must be held to have waived that provision.

2. We have carefully examined the testimony and the charge of the court in reference to the question whether there was a written application presented to the agent, and upon which it is claimed by defendant that the policy issued. The jury found against the claim by defendant's counsel, and, in effect, found that there was no written application made. It would profit no one to set out the testimony or the charge of the court, as we are satisfied that the testimony warranted the verdict found.

3. The policy contained a clause that—

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void, * * * if the subject of insurance be a manufacturing establishment, and * * * if it cease to be operated for more than 10 consecutive days, * * * or if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied, and so remain for 10 days."

Both the Cronins testified that the creamery had not been run or occupied for more than 10 days prior to the fire. Mr. Rose, the mortgagee, however, testified that he found it running less than 10 days prior to the fire. The court was asked by counsel for defendant to submit special questions upon these facts, which was done, and the jury found that the creamery was operated for the time required by the policy. It is the contention of counsel for defendant, however, that the court submitted the questions under a charge which made them wholly immaterial. Counsel asked the court to charge:

"If you find that the creamery stopped running, and ceased to produce its usual and ordinary product, more. than 10 days prior to the fire, and so remained for 10 consecutive days prior to said fire, the policy was voided, and plaintiffs cannot recover."

The court refused to so charge, but did charge:

"If you find that the defendant, by its adjuster, denied its liability to the plaintiffs,   *   *   *   and gave its reason for such denial, and plaintiffs immediately acted upon such denial and reason so given, and went to the expense of employing an attorney for the collection of its policy, the defendant would be estopped from ever afterwards setting up any other forfeiture, or any other reasons for not paying the policy; so, if you find that Mr. Wells [defendant's adjuster] gave as the only reason for denying the liability of the defendant that the plaintiffs had failed to have the permit to foreclose the mortgage   *   *   *   indorsed on the policy, and plaintiffs acted thereon, and employed an attorney and incurred expenses, then the defendant cannot set up any other or different reasons now, and would be held to have waived all other forfeitures," etc.

In refusing defendant's request, the court stated the condition of the policy in reference to the building's remaining vacant for 10 days, and added:

" A building becomes vacant and unoccupied when it ceases to be used in the usual and ordinary manner of premises intended for such purposes."

Nowhere in the charge was this request further referred

to.   As we have seen, the Cronins both testified that the building was not in operation during the 10 days.   If there was any testimony the other way, it became a question of fact for the jury to determine; and the court should have submitted it in submitting the special questions, unless the court was right in leaving the question of waiver of that clause to the jury.

It appears that David W. Wells was the adjuster of the defendant.   On December 19, 1895, he went to the place of the fire, saw the plaintiffs, made an examination, and took the statement of the plaintiffs.   After that they went to the office of the plaintiffs' attorney, and talked the matter over.   Mr. Wells testified that he told them at that time that there were three things, at least, which would render the policy void,—the foreclosure of the mortgage, the vacancy of the property, and a violation of the warranty in the application as to having a watchman to protect the property.   After that, and on January 6, 1896, he wrote the plaintiffs about the policy and the violation ot its terms, saying :

" Among other things, the foreclosure of said mortgage, and order for sale of said property, and the shutting down or closing of said creamery for more than the allowed time, without proper notice and indorsement made upon said policy, and for such violations as may be shown, the liability of said fire association under said policy ceased at the date of such violations."

Proofs of loss were thereafter sent to the company by plaintiffs, and in answer thereto Mr. Wells again wrote the plaintiffs, saying :

" As I had informed you previous to the date of these papers that the fire association did not and would not recognize any liability under said policy, on account of failure on your part to observe or fulfill the various conditions of said policy or contract, it was not necessary that formal or informal proof of loss be made by you."

We find no evidence in the record contradicting this, and the letters were apparently received by the plaintiffs.

Most certainly there is nothing in these letters, or in the testimony of the witness Wells, tending to show that the company waived this condition of the policy. The condition was a reasonable and proper one to be inserted in the policy. Compliance with it would render the risk less hazardous to the company, and it had the right to insist upon the condition being complied with. The court was in error in submitting the question to the jury whether there had been a waiver of that condition. There was no evidence of waiver, and the court should have given the request tendered by defendant's counsel. The charge as given was misleading, and may have influenced the jury in determining whether the premises were vacant or not.

We have examined the other questions raised, and find no error in them. For the error pointed out, the judgment must be reversed, and a new trial granted.

GRANT, C. J., MONTGOMERY and MOORE, JJ., concurred with LONG, J. HOOKER, J., concurred in the result.