HAMILTON v. CLIPPERT.

1. EVIDENCE—ADMISSIONS AGAINST INTEREST.

> In an action by a real estate broker for a commission on the sale of land, defendant's statement that he had sold the land to a purchaser plaintiff claims to have procured was properly received as an admission against interest, although there was a writing in evidence which plaintiff claimed evidenced the sale.

[1]Brokers, 9 C. J. § 118; Evidence, 22 C. J. § 1301.

2. SAME—ADMISSION AGAINST INTEREST AS TO CONTENTS OF PAPER ADMISSIBLE.

> An admission against interest by a party as to the contents of a paper is admissible in evidence without producing the paper.

3. BROKERS—COMMISSIONS—QUESTION FOR JURY.

> In an action by a real estate broker for a commission on the sale of land, whether defendant had sold the land to the purchaser procured by plaintiff, *held*, a question for the jury under admissions of defendant that he had made the sale and would protect plaintiff, and a paper claimed by plaintiff to also evidence said sale.

4. APPEAL AND ERROR—CHARGE CONSIDERED IN ENTIRETY.

> The Supreme Court must consider the charge to the jury in its entirety.

5. SAME—CASE NOT REVERSED WHERE CHARGE AS WHOLE PROPER, ALTHOUGH PART OPEN TO OBJECTION.

> Where the court's charge to the jury, considered as a whole, fully protected the defendant's rights, the case will not be reversed although a part thereof, standing alone, may be open to objection.

Error to Wayne; Brennan (Vincent M.), J. Submitted April 27, 1927. (Docket No. 8.) Decided June 24, 1927.

Assumpsit by Theodore W. Hamilton against Clarence G. Clippert for a commission on the sale of real estate. Judgment for plaintiff. Defendant brings error. Affirmed.

*Stevenson, Butzel, Eaman & Long* (*Rockwell T. Gust,* of counsel), for appellant.

*Bigelow & Rankin,* for appellee.

This is an action brought by a real estate broker to recover his commission under a written listing

---

[2]Evidence, 22 C. J. § 1301; [3]Brokers, 9 C. J. § 129; [4]Trial, 38 Cyc. p. 1778; [5]Appeal and Error, 4 C. J. § 3202; Trial, 38 Cyc. p. 1779.

signed by defendant, which, after giving the description and price, reads:

"I hereby give T. W. Hamilton the right until 30 days' written notice of withdrawal to sell the property described, I agree to furnish abstract of title to date of sale and to execute an instrument conveying good title to the purchaser you secure.    I also agree to pay you a commission of 5% upon the price accepted upon any sale or exchange of said property while this agreement remains in force."

It is the claim of the plaintiff and he testifies that he brought the attention of the Samuel A. Merchant Company to the property, and that they became at once interested in it.    He testifies to taking up the deal with both the company and defendant, and to getting them together on terms of minor importance.    He says:

"I told him (defendant) that the Merchant Company wanted—they told me they would buy the property on the terms—they agreed to the terms.    The terms were $1,500 an acre.    And there was a matter—a little difference as to the amount of the down payment, not very much difference, but a slight difference as to the amount, and the times that the payments would be made, but the Merchant's people said what they would —told me what terms they would give, and I went to Clippert and got Clippert's agreement to those terms. His oral agreement to the terms.    There was no quibbling about the price at any time.    It was $1,500 an acre."

Over objection of defendant's counsel he was permitted to testify:

"Q. What did Mr. Clippert say to you, if anything, with reference to whether or not he had entered into any transaction or agreement with the Merchant Company?

"A. He told me he had sold the property to the Merchant Company.    He told me that within a week of the first time that I called on the Merchant Company and it was in the board of health laboratory where he was working at that time.    *    *    *

Dr. Clippert told me the property was sold and——we couldn't have very much conversation about my selling the property after he said it had been sold. He showed me a check for a thousand dollars with the signature of the Merchant Company. He said that it was the payment to bind the sale. It was made payable to him, the way I remember it. It was either signed Samuel A. Merchant or the Samuel A. Merchant Company, I will not be sure, on that point; but I know that it was Samuel A. Merchant, and possibly 'Company.' "

There is also testimony in the case to the effect that the officials of the Merchant Company asked plaintiff to split his commission with them, which he refused to do, and we think it could be inferred by the jury that the Merchant Company declined to close the deal through plaintiff unless he would accede to this request and decided to close the deal directly with defendant or through one acting for him. There is testimony by plaintiff that he advised defendant of this situation and that "he said he would protect me."

The record shows that, a short time after listing the property with plaintiff, the defendant also executed a paper, known as Exhibit 3, to one Mayer B. Sulzberger, the legal effect of which is much discussed in defendant's brief, and which we will consider in the opinion. It involved the same property. At the close of plaintiff's proofs, and again at the close of all the proofs, defendant asked for a directed verdict. The question was reserved under the Empson act, but a judgment was entered upon the verdict, which is here reviewed under numerous assignments of error, most of which are based on defendant's contention that he was entitled to a directed verdict.

FELLOWS, J. (*after stating the facts*). It is insisted that the trial court erred in permitting the plaintiff to testify to statements claimed to have been made to him by defendant. It is insisted that these

statements had reference to written instruments, and that parol proof as to such statements was inadmissible. We should first consider this question, because, if this testimony was not admissible, then only the papers were before the court. It will be noted from the statement of facts that these statements of defendant amounted to an admission that defendant had sold the property to the Merchant Company, an admission against interest. This was an admission of a fact as distinguished from one of law. Whether defendant had sold the property to the Merchant Company was a question of fact. Whether the papers he had executed conveyed good title or constituted a binding contract was, of course, one of law. But an admission against interest by a party as to the contents of a paper is admissible in evidence without producing the paper. *New York Central Ins. Co.* v. *Watson,* 23 Mich. 486. In 22 C. J. p. 1016, § 1301, it is said:

"It has been held in many jurisdictions that the best evidence rule does not apply to parol admissions *in pais* and against interest, or acts equivalent thereto, and that such admissions are competent as primary evidence against the party making them, although they involve what must necessarily be contained in a written instrument, in a corporate vote, or in a public record."

This testimony of defendant's admission against interest was admissible. With this testimony in the case, together with the testimony that defendant agreed to protect plaintiff in his commission, substantially an agreement to pay the same, a much different case is presented than as though Exhibit 3 was the only evidence of a sale in the record. Indeed, defendant's counsel, from his lengthy brief on the subject, has apparently become so engrossed in the intricate legal questions involved in the construction of Exhibit 3 that he overlooks the fact that his

client's admissions were in the case, took the question of a sale to the Merchant Company to the jury, and that they were for the consideration of the jury, together with the other testimony in the case, including Exhibit 3.

From the testimony in the case the jury might well infer that both the defendant and the Merchant Company treated Exhibit 3 as a contract of sale and acted accordingly, and they could also infer from the circumstances in the case that Sulzberger was acting for the Merchant Company. Exhibit 3 was in form both an option and a listing contract. Under the holding of this court in the recent case of *Greenough* v. *Willcox*, 238 Mich. 52, handed down since this case was tried, it should be treated as a listing contract and not subject to the payment of the specific tax provided for in Act. No. 91, Pub. Acts 1911 (1 Comp. Laws 1915, § 4268 *et seq.*).

The testimony in the case, some of which we have quoted, took the question of procuring cause to the jury. The defendant's brief criticizes the following language in the charge:

"The plaintiff has asked me to charge you, and I do, that if you believe from the evidence in the case that Mayer B. Sulzberger was acting for and in behalf of the Samuel A. Merchant Company when he obtained the execution of the agreement, Exhibit 3, that is this paper upon which the writing is indorsed on the back (meaning the Sulzberger contract), then I charge you that the said Samuel A. Merchant Company would in such case be the real party in interest, and the agreement, Exhibit 3, would in law be the agreement of the Samuel A. Merchant Company. That is, if Mr. Sulzberger was acting as an agent for them, even though he did not disclose or make known to the Clipperts that he was acting as agent, still it would be their agreement."

The criticism against this instruction is that the jury would be led to infer that Exhibit 3 was a binding

agreement of sale. If this was all that was said on this subject there would be force in defendant's contention, but it was immediately followed by the following statement by the court:

"As I have already charged you, this agreement is not in itself a sale. It is a mere proposal for a sale, and the question is whether it was followed up by such acts and such transactions as actually to make a sale."

And before that the trial judge had charged the jury as to the legal effect of the exhibit. He said:

"Now, I will charge you that this paper, whatever it may be, is not in itself a sale of this land. If 24 hours after this paper was signed Clipperts had tried to make Mr. Sulzberger buy the property they could not do so because he did not agree to buy it in this paper. A sale or a contract of sale must be binding upon both parties. There cannot be a seller without a buyer. There cannot be a sale without a purchaser, and Clipperts could not be said to have sold this property or to have contracted to sell it unless somebody else bought it at the time or contracted to buy it, and in so far as this paper, taken by itself, is concerned, there was no actual sale."

We must, of course, consider the charge in its entirety. So considered, the defendant's rights were fully protected. If defendant had sold the property to the Merchant Company, as plaintiff testified he admitted he had done, and plaintiff was the procuring cause of the sale, he had earned the commission. If defendant had only executed Exhibit 3, plaintiff had not earned his commission, and the trial judge so instructed the jury.

The other assignments of error have been examined, but do not need discussion.

The judgment will be affirmed.

SHARPE, C. J., and BIRD, SNOW, STEERE, WIEST, CLARK, and McDONALD, JJ., concurred.